UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIKA CONNER, et al.,

    Plaintiffs,

v.

Case No. 2:10-CV-511
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE MARK R. ABEL

CITY OF COLUMBUS, et al.,

    Defendants.

## OPINION & ORDER

This matter is before the Court on Defendants the City of Columbus, Roderick Wittich, and Keith O'Connor's Motion for Summary Judgment (Doc. 19). For the reasons that follow, the Defendants' motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Erika Conner ("Conner") brings this action against the City of Columbus ("the City"), Columbus Police Lieutenant Roderick Wittich ("Wittich"), and Columbus Police Officer Keith O'Connor ("O'Connor"), alleging violations of her constitutional rights together with state tort law claims. Conner, who is proceeding without the assistance of counsel, has also filed suit on behalf of her daughter, Vanashia Conner, for loss of consortium.

On the evening of June 6, 2008, after being confronted with a handgun, a Columbus police officer shot and killed a man named Edward Hayes on the grounds of the Mount Vernon Apartment complex. (Doc. 19, at 11.) At the time of the shooting, Conner was holding a graduation party for her daughter across the street from the apartment complex. (Conner Dep.

23–24.) Edward Hayes had attended the party before the shooting and had given Vanashia Conner a gift. (*Id.* at 26.)

Conner—who describes herself a community activist—was very outspoken about the shooting, claiming that Edward Hayes was murdered by a Columbus police officer. (*Id.* at 9, 23, 27.) In response to the shooting, Conner organized a march on City Hall for June 9, 2008. (*Id.* at 73–76.) The march drew over fifty protestors. Columbus police officers Keith O'Connor and Stephen Oboczky were assigned to escort the protestors down to City Hall. (O'Connor Aff. ¶ 2.) Both officers were dressed in standard police uniforms. (*Id.* ¶ 3.)

After escorting the marchers, O'Connor and Oboczky left City Hall to meet with Lieutenant Roderick Wittich at Columbus Police Headquarters. While at headquarters, the officers received a call that protestors were creating a disturbance inside of City Hall's lobby. (*Id.* ¶ 3.) In response to the reported disturbance, the three officers immediately walked to City Hall and entered the lobby to find a crowd of people "yelling, crying, chanting, and protesting." (O'Connor Aff. ¶ 4; Wittich Aff. ¶ 6.) Wittich walked through the crowd in an attempt to find the person who was in charge of the protest. (O'Connor Aff. ¶ 5.) As Wittich walked through the lobby, O'Connor observed Conner grab a partially full water bottle out of someone's hand and throw it overhand at Wittich, striking him in the back. (*Id.* ¶ 6.) Immediately after throwing the bottle, Conner tried to back up and blend back into the crowd. (*Id.*) The incident was recorded by City Hall's security cameras. (Conner Dep., Ex. 13, at 17:33:38.)

O'Connor then identified himself as a police officer and informed Conner that she was under arrest, escorting her toward the doorway of City Hall in an attempt to lead her out of the building. (O'Connor Aff. ¶ 8.) According to O'Connor, Conner turned toward him, threw a punch at his head, and tried to pull away. (*Id.* ¶ 9.) O'Connor was able to step inside of the arc

2

of Conner's punch and avoid her fist, but her forearm struck him in the neck and shoulder area. (*Id.*) O'Connor caught Conner's free arm and pinned her arms to her sides. (*Id.*) At this point, O'Connor and Conner were standing face-to-face. (*Id.*) O'Connor then attempted to lift Conner off of the ground to walk her out of the lobby's front doors, although she was flailing, kicking, and fighting. (*Id.* ¶¶ 9, 11.) Conner's actions caused O'Connor to trip over a carpet in the lobby and fall on top of her. (*Id.* ¶ 11.) Conner suffered an injury to the lip from the fall. (*Id.*)

After the fall, O'Connor attempted to roll Conner onto her stomach and handcuff her, but Conner refused to put her hands behind her back. (*Id.* ¶ 12.) In an attempt to get Conner away from the crowd, O'Connor picked Conner up from the ground, took her outside, and placed her in a police cruiser. (*Id.* ¶ 13.) Conner refused to walk to the cruiser, dragging her feet on the ground and scraping the tops of her feet. (*Id.*) According to Wittich, the only time he touched Conner was when he touched one of her arms to help ensure that she did not fall when she was being carried to the police cruiser. (Wittich Aff. ¶ 9.) Soon after the incident, Conner was provided first aid for her injuries by the Columbus Fire Department. (O'Connor Aff. ¶ 14.)

Three hours after the incident, Conner was interviewed by Columbus Police Detective Heather Collins ("Collins"), during which Conner made a number of statements about the incident.[1] (Conner Dep. 123.) Conner stated that when someone grabbed her, she thought a riot or a "riot fight" might have been starting. (*Id.* at 126–27; Conner Dep. Ex. 8, at 6:28:50 to 6:29:02.) In response to Collins's questions about any injuries she may have suffered, Conner stated, "When we fell back. I think it's when we fell, because I didn't think anybody was going to grab me. And I don't think they . . . I don't know what happened after . . . I know that they didn't, like, slam me or try and hurt me. I just think we fell back." (Conner Dep. 130–32;

---

[1] Video of Conner's interview with Detective Collins is contained on a DVD marked as "Conner Dep. Ex. 8, Erika Conner Interview."

3

Conner Dep. Ex. 8, at 6:27:45 to 6:28:07.) When someone came in to document Conner's injuries, she stated, "I don't think any of this is on me is intentional at all. Because I didn't know that someone was gonna tackle, I think it's a result of me falling. I don't think they were trying to put things on me." (Conner Dep. 133–37; Conner Dep. Ex. 8, at 6:04:35 to 6:05:54.) Conner also stated, "But you know the officers were all nice and they all helped me and they all were nice to me. And none of them were . . . none of them were doing anything. It was really good. Everybody was nice. Everybody was helpful." (Conner Dep. 137–40; Conner Dep. Ex. 8, at 6:28:11 to 6:28:27.)

In her Complaint, however, Conner alleges that she was "grabbed around her neck and throat and slammed down on the floor" by O'Connor and that this action was "taken by surprise and unprovoked." (Compl. ¶ 6.) Conner further alleges that she was "thrown in the back of [a] vehicle and taken to jail, processed and detained without receiving medical attention until." (*Id.*)

Prior to filing this action, Conner was charged with two counts of assault on a police officer. She was indicted by the Franklin County Grand Jury on July 11, 2008. (Doc. 19, Ex. E.) After a two day bench trial, the judge found that the state failed to show beyond a reasonable doubt that Conner knowingly caused or attempted to cause physical harm to a peace officer in the commission of official duties. (Doc. 19, at 13.)

Conner filed this action on June 11, 2010 against the City of Columbus, O'Connor, and Wittich under 42 U.S.C. § 1983, alleging violations of her constitutional rights under the Fourth and Fourteenth Amendments of the federal constitution. Conner also brings state tort law claims against each Defendant, and a loss of consortium claim on behalf of her daughter, Vanashia Conner. Defendants have moved for summary judgment on all claims.

4

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the Defendants' motion for summary judgment, this Court must "view all facts and any inferences in the light most favorable" to Conner, the nonmoving party. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for summary judgment should be denied if "there is a genuine need for trial," which turns on "whether the evidence is such that a reasonable jury could return a verdict for the plaintiff." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375 (6th Cir. 2002).

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." *Viergutz v. Lucent Technologies, Inc.*, 375 F. App'x. 482, 485 (6th Cir. 2010). Instead, the party opposing summary judgment "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine need for trial." *Id.* If the nonmoving party presents evidence that is "merely colorable" or "not significantly probative," then summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

In this case, Conner is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "A court should make a reasonable attempt to read the pleadings to state a valid claim on which the plaintiff could prevail, despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with the pleading requirements. *Ashiegbu*

5

*v. Purviance*, 74 F. Supp. 2d 740, 746 (S.D. Ohio 1998). This standard does not mean, however, that pro se plaintiffs are entitled to take every case to trial. *Id.*; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Indeed, courts should not assume the role of advocate for the pro se litigant. *See Hall*, 935 F.2d at 1110.

### III. DISCUSSION

Defendants move for summary judgment on all claims asserted by Conner. The entirety of Conner's response to the Defendants' motion for summary judgment reads as follows:

**Re: Summary Judgment**

> I [d]eclare under penalty of perjury and I so stated in my deposition that the facts are in dispute due to the fact I was found NOT [g]uilty of the assault charges, never charged for resisting arrest, thus the Columbus Police did not have [the] right to use their aggressive defense training in subduing me, and subsequently arresting me. The Columbus police have had a history of aggressive behavior, where they have used excessive force and charged a person with a crime to in fact covering up the original infraction. The Justice Department has on various occasions have made this same analysis.
>
> My position is due to the fact that, I was never charged or arrested for resisting arrest where my injuries occurred.
>
> Due to this fact and others, their Summary Judgment should not be granted and I should be able to present my case in front of a Jury Trial of my peers. This fact is the reason I deserve[.]

(Doc. 30.) Conner contends that an acquittal in her criminal prosecution creates a genuine issue of material fact in this case. Other than noting her acquittal, Conner fails to reference any evidence in her response with regard to her claims. No evidence is attached to her response. Thus, the only evidence properly before the Court is the evidence submitted by the Defendants in their motion for summary judgment.

To overcome a summary judgment motion, it is not sufficient for the non-moving party to merely "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

6

U.S. at 586. Moreover, the Court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, the non-moving party "has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* It is with these standards in mind that the Court addresses the Defendants' arguments as to each of Conner's claims: (1) section 1983 and state tort law claims against Officer O'Connor and Lieutenant Wittich; (2) section 1983 municipal liability and state law claims against the City of Columbus; and (3) loss of consortium claim on behalf of her daughter, Vanashia Conner.

## A. Claims Against Officer O'Connor and Lieutenant Wittich

Conner brings the following claims against O'Connor and Wittich: (1) a § 1983 violation by using excessive force in violation of the Fourth Amendment reasonableness standard; and (2) state tort law claims for assault, battery, and intentional infliction of emotional distress.

### 1. Section 1983 Claim

Defendants move for summary judgment on Conner's § 1983 claim. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, in order to prevail on her § 1983 claim, Conner must show that, while acting under color of state law, O'Connor and Wittich deprived her of a right secured by the

7

federal constitution or laws of the United States. *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003). Conner alleges that O'Connor and Wittich used excessive force in violation of the Fourth Amendment reasonableness standard. Defendants contend that they are entitled to summary judgment because O'Connor and Wittich are entitled to qualified immunity. The Court agrees.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In addressing the potential applicability of qualified immunity, the Court considers whether, on the plaintiff's facts: (1) the official violated a statutory or constitutional right; and (2) whether that violation involved "clearly established constitutional rights of which a reasonable person would have known." *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002). The second inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). The Supreme Court has clarified that lower courts have discretion to decide which of the two prongs of qualified immunity analysis to tackle first. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

While qualified immunity cannot protect defendants from liability if, on an objective basis, no reasonably competent officer would have acted as they did, if officers of reasonable competence could disagree on the lawfulness of the alleged conduct, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, the defense of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* In determining whether a defendant is entitled to qualified immunity, "[t]he

8

ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1999).

With respect to Officer O'Connor, the Court finds no genuine issue of material fact. Conner had thrown a partially full water bottle at Lieutenant Wittich's back, which O'Connor believed posed an immediate threat to the safety of Wittich and the other protestors in the lobby. (O'Connor Aff. ¶ 7.) O'Connor immediately identified himself as a police officer, told Conner she was under arrest, placed her in the escort position, and started walking her toward the doorway in an attempt to lead her out of the building and away from the crowd. (*Id.* ¶ 8.) In response to being placed under arrest, Conner turned toward O'Connor, threw a punch at his head, and tried to pull away, after which O'Connor caught Conner's free arm and pinned both of her arms against her body. (*Id.* ¶¶ 8, 9.) Because Conner was actively resisting arrest, O'Connor lifted Conner off of the ground and attempted to walk her out of the building while she was flailing, kicking, and fighting. (*Id.* ¶ 11.) Conner's actions caused O'Connor to trip and fall on top of her. (*Id.*) O'Connor then rolled Conner over on her stomach and handcuffed her. (*Id.* ¶ 12.) In order to get a safe distance away from the crowd, O'Connor picked Conner up from the ground, took her outside, and placed her in a police cruiser. (*Id.* ¶ 13.) The Plaintiff has presented no testimony or affidavits to contradict the statement of O'Connor. Moreover, Conner has failed to present any evidence to show that O'Connor acted unreasonably, incompetently, or otherwise knowingly violated the law. Accordingly, the Court finds that O'Connor is entitled to qualified immunity in this case.

Similarly, with respect to Lieutenant Wittich, Conner has not met her burden to show that Wittich is not entitled to qualified immunity. Conner has failed to produce any evidence of individual involvement in impermissible conduct on the part of Wittich. To succeed in a § 1983

9

action, a plaintiff must show personal involvement by a defendant in the alleged constitutional violation. *Jacob v. Twp. of W. Bloomfield*, 192 Fed. App'x 330, 336 (6th Cir. 2006); *see also Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("[A] public official is liable under § 1983 only if he causes the plaintiff to be subject to a deprivation of his constitutional rights."). According to Wittich, the only time he touched Conner was when he touched one of her arms to help ensure that she did not fall when she was being carried to the police cruiser. (Wittich Aff. ¶ 9.) Conner has presented no evidence to the contrary. As it does not appear from the record that Wittich was "plainly incompetent or . . . knowingly violate[d] the law," the Court finds that Wittich is entitled to qualified immunity in this case.

### 2. State Tort Law Claims for Assault, Battery, and Intentional Infliction of Emotional Distress

Defendants also move for summary judgment on Conner's state law tort claims against O'Connor and Wittich. Conner brings claims for assault, battery, and intentional infliction of emotional distress ("IIED"). Conner's claims, however, fail as a matter of law because O'Connor and Wittich are entitled to statutory tort immunity.

Ohio Revised Code §2744.03 provides immunity for employees of a political subdivision from whom "damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function" are sought. The term "governmental function" includes "the provision or nonprovision of police . . . services or protection." Ohio Rev. Code § 2744.03(C)(2)(a). An employee is immune from liability unless any of the three exceptions to immunity listed in Ohio Revised Code § 2744.03(A)(6) applies to expose the employee to liability.

A police officer is an employee of a political subdivision and, as such, is generally protected by the statutory immunity granted by Ohio Revised Code § 2744.03. *See Mayes v. City of Columbus*, 664 N.E.2d 1340, 1348 (Ohio Ct. App. 1995). Thus, the Court begins with the presumption of immunity. *See Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995). The plaintiff bears the burden of demonstrating that the officer's actions fall within one of the three exceptions listed in Ohio Revised Code § 2744.03(A)(6).

Conner has not met her burden here. Conner has failed to point to any evidence that would establish the existence of a genuine issue of material fact pertaining to the applicability of any of the exceptions to immunity under Ohio Revised Code § 2744.03(A)(6). Conner has not established that O'Connor and Wittich were not acting within the scope of their employment while performing their duties as a police officer; *see* Ohio Rev. Code § 2744.03(A)(6)(a); or that either officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner; *see* Ohio Rev. Code § 2744.03(A)(6)(b); or that any section of the Ohio Revised Code expressly imposes civil liability on either officer; *see* Ohio Rev. Code § 2744.03(A)(6)(c). Accordingly, Defendants are entitled to summary judgment on Conner's state law tort claims against the O'Connor and Wittich.

### B. Claims Against the City of Columbus

Conner alleges the following claims against the City: (1) section 1983 municipal liability; and (2) a state law tort claim for negligent hiring and retention.

#### 1. Section 1983 Municipal Liability

Defendants move for summary judgment on Conner's § 1983 claim against the City because Conner has failed to point the Court toward the requisite custom, policy, or practice to

11

establish § 1983 municipal liability for the City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A city cannot be held liable under § 1983 for injuries inflicted solely by its employees. *Monell*, 436 U.S. at 694. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* The Sixth Circuit has held that to satisfy *Monell*, "a plaintiff must identify the policy, connect the policy to the City itself and show that particular injury incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Defendants' argument is well taken. Conner has failed to present any evidence demonstrating that she endured a constitutional deprivation and that the City had a policy, custom, or practice in place that could have caused it. *See Monell*, 436 U.S. at 691. Without such a predicate foundation, there is no basis for *Monell* liability here.

### 2. State Tort Law Claim for Negligent Hiring and Retention

Defendants also move for summary judgment on Conner's state law tort claim against the City for negligently hiring and retaining its employees. Conner alleges that the City "owed a duty to protect [her] safety" and that its "hiring or retaining their employees [O'Connor and Wittich] were the proximate cause of [her] injuries." (Compl. ¶¶ 33, 35.) Conner's claim, however, fails as a matter of law because the City is entitled to statutory tort immunity.

The Political Subdivision Tort Liability Act establishes statutory tort immunity in some cases in which political subdivisions, including cities, may otherwise be sued for negligence. Ohio Rev. Code § 2744, *et seq.*; *see also Haynes v. City of Franklin*, 767 N.E. 2d 1146 (Ohio 2002). Determining whether a political subdivision is immune from tort liability pursuant to the

12

Ohio Revised Code involves a three-tiered analysis. *Colbert v. City of Cleveland*, 790 N.E.2d 781, 783 (Ohio 2003). The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.*; Ohio Rev. Code § 2744.02(A)(1). However, that immunity is not absolute. *Colbert*, 790 N.E.2d at 783; Ohio Rev. Code § 2744.02(B). The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in Ohio Revised Code § 2744.02(B) applies to expose the political subdivision to liability. *Colbert*, 790 N.E.2d at 783. If any of the exceptions to immunity in Ohio Revised Code § 2744.02(B) apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in Ohio Revised Code § 2744.03 apply, thereby providing the political subdivision of a defense against liability. *Id.*

Ohio Revised Code § 2744.01(C)(2)(a) includes "the provision or nonprovision of police . . . services or protection" within the definition of "governmental function." The conduct which Conner alleges—that Wittich and O'Connor were "incompetent in their duties as City of Columbus police officers"—occurred while City employees were performing a governmental function. A review of the five exceptions to immunity listed in Ohio Revised Code § 2744.02(b) reveals that no exception to immunity applies in this case. Accordingly, Defendants are entitled to summary judgment on Conner's state law tort claim against the City.

### C. Loss of Consortium Claim on Behalf of Vanashia Conner

Defendants move for summary judgment on Conner's loss of consortium claim on behalf of her daughter, Vanashia Conner. Although 28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel," the statute does not permit plaintiffs to appear pro se where interests other than their own are at

stake. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). In this case, Conner is proceeding pro se and thus cannot appear on her daughter's behalf. As such, Defendants are entitled to summary judgment on Conner's loss of consortium claim.

## IV. CONCLUSION

In summary, the Court finds that the Defendants are entitled to summary judgment on all of Conner's claims against them. Conner has not established a genuine issue of material fact on any of her claims. Accordingly, the Defendants' Motion for Summary Judgment (Doc. 19) is **GRANTED**. The Clerk is directed to close this matter and enter judgment in favor of the Defendants.

**IT IS SO ORDERED.**

8-9-2012
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE